Good morning, Your Honors. Cynthia Footer on behalf of the appellant, All-Text. Your Honors, the issue I would like to start with is the one that I think is the most critical, at least from my client's perspective, and that is the question of inquiry and constructive notice. The bankruptcy court refused on the day of argument, it's our excerpts 5 at page 216 to 218, to look at any of the evidence that we had gathered that we believe would require a reasonably prudent person to look into the status of title and whether or not this property had been pre-sold to my client. There's no question you were not in possession. There is no question we were not in possession. No, it's a vacant lot. There was no way we could be in possession. Well, there is a way you could be in possession, but anyway, you're not. You don't contest that. No, in fact, the purchase agreement had not closed. It was a bill to suit agreement. They had to build the property, go through the entitlement process, and do some other things before we legally could have a CFO. Well, there's nothing recorded and there's nothing on the property. Why would a bona fide purchaser have any problem getting a clear title? Because, Your Honor, I believe under California law, inquiry notice is not just what is in fact recorded. There is what would a reasonably prudent person look at. And the BAP, where they asked me for some of the ---- I know they're supposed to look at the property. Pardon? I know they're supposed to look at the property, but there's nothing about the property that suggests that somebody else owns it. Well, Your Honor, I think it's a question of whether or not somebody else would have an interest in it. And so the question from our perspective was if all that ever matters is what is recorded, then this whole question of inquiry notice becomes irrelevant. Under the inquiry notice, if you look at a piece of property, the BAP cited three or four cases what inquiry notice would be. One was whether there was an inadequate purchase price, whether there were personal communications. It was that whole other area. If all that matters is what happens when you look at the records or you walk the property, then inquiry notice and that whole body of law becomes irrelevant. Well, what was present here then put people in inquiry? Your Honor, there were a number of things that we tried to bring before the bankruptcy court. For example, this is a former landfill. A reasonably prudent person buying a landfill knowing that there are gas and other monitoring obligations, we believe any reasonably prudent person would go look and see what could you build on this land. You would look at other public records like the entitlements, like there are building restrictions for the City of Los Angeles, all of which are a matter of public record. Now, they're not filed in the title reports, but they're all in the zoning laws and applications, and we believe that no reasonably prudent person would come in and buy this kind of environmentally contaminated property without inquiring what could you build on it. Well, yeah, but I can understand that, but that's not an inquiry into who owns what. It's an inquiry into what sort of environmental problems there might be. I don't see how that gets them to another owner than an unrecorded, non-possessory interest. Well, it gets them as to inquiry as to what other claims might exist on the property. It's not just title claims. It's what other means and rights might exist. There's property being sold to me, and it's got environmental problems. Why does that lead me to inquire whether there are unrecorded interests that somebody might own in it? Because I would think that you'd want to know what you could build on that property. You're interested in more than title. I might worry about what I can build on top of contaminated soil or something like that, but that doesn't have anything to do with who owns the property. But it might have to do with who has a contractual interest in that property. Remember, we're not only talking about title. We're talking about under Civil Code 1214 and 1217 any interest in property, not just a title interest, but any interest in property which would be liens or other interests. So you're going beyond who would own it. It would be who has an interest in it. I still don't see why the fact that the soil is contaminated would lead somebody to an inquiry into unrecorded non-possessory interests that might exist. It seems they might want to analyze the soil. I don't know that they'd start on a search to see if somebody has an unrecorded non-possessory interest in that property. But I think if you were worried about liens, I mean, every commercial purchase agreement you see has reps and warrants about liens. Sure. And they go to the county recorder and they look for the liens and they do a title search. And, of course, none of your interest would appear there. Right. But they would appear in the zoning. All of the things that you would look at in a normal commercial transaction would have reflected the alt text content. What you're saying then is they should be on inquiry notice of something that would cause them to accidentally discover an unrecorded non-possessory interest. No. I'm saying they would be on inquiry notice of what a reasonably prudent person in doing that transaction would look at. I mean, for example, if you look at some of the cases on inquiry notice cited by the BAP, one of the cases is because the purchase price is inadequate. Put the buyer on ñ Was it inadequate here? Pardon? Was the purchase price inadequate here? That's one of the things that we think we're entitled to a trial on, Your Honor. I personally believe, given all the contamination and the building restrictions, no, it was not an unreasonable price. But 33 acres of pristine, readily buildable land in the valley, $18 million is not, I believe, a fair price. It would be worth probably triple that. But that was the point, Your Honor, is that we brought all of this evidence before the Court, and the Court said very clearly, I'm not going to look at that because all that inquiry notice is is what you see in walking the property. We believe that that's too narrow of a ñ or too restrictive of a reading. Counsel, Judge Gould, with a question for you. I guess I'm having a problem in understanding maybe the same concern that Judge Canby was expressing. Let me try to frame the question in my mind a bit differently. Okay, assuming that there are environmental problems with the land, with the property, what is the nexus or connection between the environmental problems and whatever inquiry would have revealed your client's alleged claims? The nexus is there are building restrictions on this property, very extensive building restrictions. There are wage restrictions. There are access restrictions. Why would building restrictions on the property, why would those lead someone to understanding your client's alleged interest? Because when you go get those restrictions off the County of Los Angeles website, my client's contract and the fact that it had pre-bought some of this property is outlined in detail. In fact, the Alltex contract was an exception to the City Council's building and wage and other restrictions. This property is in an enterprise zone. So if you just go look at the zoning on this property and all of the documents backing up the zoning and all of those kinds of things, my client is all over it. We presented all of that to the bankruptcy court, and so the question was would a reasonably prudent person buying this asset just look at a title report and nothing more? But does a reasonably prudent purchaser have to find your client's contract and analyze it for exposures when there's no Liz pendants that's been filed? I don't believe they have to analyze it for exposure, but I believe a reasonably prudent person would look at the zoning. I mean, I believe that's the issue. I seem to recall that the contract that your client entered had a provision saying the contract couldn't itself be made public record. Your Honor, it specifically said it could not be recorded. Right, the contract couldn't be recorded. But couldn't your clients have asserted some type of claim in a Liz pendants that could have been filed against the property without recording the contract itself? Yes, I believe once the litigation was commenced, it could have, in fact, filed the Liz pendants. I believe there are many things that a client can do. I mean, for example, my client could have put a sleeping bag out on the property with a sign that says all tax has this under contract. I think I don't mean to minimize it. That sounds a little facetious actually. That's not helping me that they could have put a sleeping bag there. No, sir. What I'm trying to understand is what is the principle, the rule of law that leads you to think that notice inquiry gets this far? Your Honor, I believe that the notice inquiry or the inquiry notice, and I apologize, did not mean to be facetious. It's when you have a purchased contract and you're going to be purchasing property, it's very hard to put something on the property noticing your interest. You presumably could put a sign or some other way, but just by virtue of the nature that you're going to be purchasing it and not actually purchased it and possessed it, so I did not mean to be facetious. But I believe that you go back to the reasonable. That's okay. No problem. What do you think is your best decided case as a precedent that would say that notice inquiry would go this far? Your Honor, I believe it's the probasco and those lines of cases, not on their facts but on their rule of law, that whether or not somebody is on a duty of inquiry depends on whether a client would inquire further into facts. Okay. That's the traditional test. But what's the closest case on facts such as this that you think is analogous in the facts to say that the Fornaciari lenders would have been on a, should have had reasonable notice of your client's claims? Well, Your Honor, it's a little different than that. The Fornaciari's, in fact, knew about my client's claim. It goes to the debtor in possession. Whether or not the debtor in possession standing in the shoes of a reasonable person would have known. And in this case, Your Honor, we have searched in other districts and other circuits. We cannot find any factual situation like this. The four cases cited by the BAP give us a sense of that, for example, where either the purchase price is inadequate or one person signing the documents they know to be married but both spouses didn't sign. Those kinds of things in doing the transaction would give a reasonable, prudent person reason to look further. And that's why what we brought before the bankruptcy court was all of those documents. We cannot say if you just walk the property that there was anything there like a construction trailer or a sign. None of that was on the property. And if it must be, if the legal standard is it must be visible from simply walking the property as Judge Thompson ruled, I don't think we have any place to go. We did not have anything on the property that would say this property has been pre-sold. There are plenty of things in the city entitlements, in zoning, in the rules and regs regarding this property, all of that stuff. But on the physical property itself, Your Honor, there was nothing that would give an indication if you just physically walked the property. Is that responsive to your question, Your Honor? I think it is. I guess I'm still conceptually having trouble understanding why if you had and notice that would lead you to the zoning regs, that that would be enough because you would see your client's contract recorded in city records? The contract is not. And you think the reasonable purchaser would then know they had a claim? Yes, Your Honor. And the reason I believe that is because in every commercial transaction on real property, there are always refs and warrants as to other liens, other contracts, litigation, all of those things that reasonably prudent not only purchasers but lenders require. And so I think it's a question of do you start from what would a reasonably prudent person look at in the circumstances of the case, or is the law what would somebody learn if they just walked the property? That's where I believe the legal issue lies. Okay. Thank you. Thank you. I'll save my last minute. Good morning, Your Honors. David Kupitz of Selmire Kupitz, appearing for Branford Partners, LLC, the debtor in possession. And, Your Honors, I was going to take 10 minutes if needed and divide the rest of the time with the other counsel for the other appellees. This situation, Your Honors, I think it's quite revealing and significant that Altex, the party that's taking the position that the world should have been on inquiry notice about its alleged interests and liens in this property, itself had no idea that these alleged interests and liens existed. In fact, when five months approximately after the Chapter 11 case was filed under penalty of perjury, Altex, through its counsel, signed a proof of claim filed in the bankruptcy case that clearly stated that Altex had an unsecured claim. Attached to that proof of claim was Altex's pre-petition lawsuit state court complaint against the debtor, which didn't raise any of these issues regarding alleged interests or liens in the property. Altex, in fact, was represented, as the record is clear, all these facts are undisputed, uncontroverted facts, by counsel, the same counsel that represents it here on this appeal, who also was counsel years prior when this transaction was occurring for either the debtor or the manager of the debtor. The debtor's an LLC. If anyone had knowledge about this, Altex and its counsel had knowledge of it. But meanwhile, they didn't raise it. They didn't know about it. They filed a proof of claim under penalty of perjury. After the sale closed, Altex chose to raise some new and creative litigation contentions, which became the basis of this appeal. When counsel for Altex points to the ProBrasco decision as the best case out there, it is quite revealing. That case, they say, you should follow for some rule of law, but ignore the facts because that is another one of the typical decisions of very clear, open possession of the real property in conflict with the recorded documents. So what Altex is really trying to do, Your Honors, is ignore all the cases that exist in terms of the facts and create new law. They're making up law. There's no law to support the position that Altex is taking. There was no Liz Pendens that was filed. Altex had the right to record Liz Pendens. Counsel has conceded that. That was not done. California law, as followed by this court, as applied by this court, makes clear that the only way to provide constructive notice is by the recordation of appropriate documents with the county recorder filing of a Liz Pendens. That's the only way to provide constructive notice. Sometimes the terms inquiry notice and constructive notice are blurred together. There's not really good distinction. The case law identifies the distinction that this court has recognized with respect to the visible condition of the property. If there's possession that is clearly in conflict with the recorded documents, that does lead to inquiry notice. That didn't exist here. That's conceded. Also with the documents itself, when you looked at the recorded documents, if there were some blatant defects or other issues raised by looking at the documents, that provides notice. But the scope of the potential legal theory that is being presented here, there'd be no limits ultimately. That's what the Bankruptcy Appellate Panel recognized. In fact, in its decision, I think, specifically referenced the fact that at the oral argument before the Bankruptcy Appellate Panel, counsel for ALTAC said, yeah, an Internet search, there would be no limit. You'd have to go out on the Internet and do a full search. That's clearly not what's contemplated under the law. This is a situation where, unfortunately, the estate's been severely harmed and impacted by the actions of ALTAC. But we have to follow the law, and we have to participate in these appeals, whether there's a legal basis for the contentions or not. I suppose if ALTAC's claims had simply been disallowed instead of avoided, the other appeal would have been unnecessary. In other words, I think in the other case, we had trouble understanding whether there's any interest here at all. Well, what happened, Your Honor, there is another matter. There were parallel matters before the Bankruptcy Court. There was an objection to ALTAC's claim itself where the court granted partial summary judgment. I guess that's still just hanging there. No, not completely. That's largely been resolved. Remember, what ALTAC originally did was file a general unsecured claim. Well, it still may not have filed a secured claim. No, it did. It filed an amended. It was late. It was after the bar date. The bankruptcy judge, Judge Thompson, granted partial summary judgment in favor of the debtor with respect to that claim, disallowing the claim as a secured claim. The unsecured claim of ALTAC, which the debtor also has a pending objection to, has not been fully litigated because there may never be a need, depending on whether there ends up being funds available for distribution to general unsecured creditors. Well, if there is not a loud secured claim, you don't even have to avoid, do you? That's correct. I mean, Your Honor, the debtor has done extensive, despite what's being indicated here in the prior appeal, the debtor did extensive evaluation of any potential rights and litigation positions, and it was under no compulsion to abandon or anything else. There's no law to support that. ALTAC has no secured claim at all. The debtor believes ALTAC has no allowable claim. Whether there is any need in this case to ever really spend the resources to litigate the allowability of a general unsecured claim is uncertain at this time. And most likely there won't be because of the years that have passed. This bankruptcy case has been pending since December 2006, and the expense of ongoing interest accrual and attorney's fees and other costs, both of the secured creditors who, when they're oversecured under the bankruptcy code, have a right to assert as part of their claim not only the ongoing interest obligation accrual, but also fees and charges that they incur, and the other fees and costs that the estate has been burdened with as a result of the positions being taken by ALTAC. All that being said, I don't want to take too much time here because I don't think it's necessary. ALTAC has done nothing to in any way, in our view, undermine the very well-reasoned decision either of the bankruptcy court or the bankruptcy appellate panel. ALTAC is attempting to create a completely new law that it has no support for in any case authority. The Prograsco decision that has been identified in oral argument today as the best decision to support ALTAC's position has been clearly analyzed by the bankruptcy court, by the bankruptcy appellate panel, and by the appellees, and it has no application here. That was a case of clear and open possession directly in conflict with recorded documents. That puts some party on inquiry notice. ALTAC is not appointed to anything that is supported by applicable law putting any party on inquiry notice. It certainly has conceded that there was no constructive notice here. There was no lispendence recorded. The state court complaint wasn't recorded. The contract wasn't recorded. None of that happened. Thank you, Your Honors. Good morning, Your Honors. Kelly Pope with Downey Brand on behalf of creditor California Environmental Redevelopment Fund, which is the creditor that holds the first deed of trust on the property. I concur with everything that Mr. Kupits has said, and I just briefly want to add something. It seems that ALTAC's arguments, when you look at their papers and from counsel's arguments, it seems to be that if a person asks enough questions about a piece of property, they will eventually uncover all of the unrecorded interests in the property. And not only that, but a prudent person, according to ALTAC, has a duty to ask such questions, even if there's nothing about the recorded state of title or the visible state of affairs on the property, to give any indication that there are such unrecorded interests. But ALTAC hasn't cited any cases that actually say that, and there aren't any cases that say that. To pick up on something Mr. Kupits said, there's some confusion in the cases with the terms inquiry notice and constructive notice. In our brief, we cited cases that provide under California law what constructive notice is. Constructive notice is notice provided by properly recorded documents that are picked up in the chain of title. And ALTAC's argument would do away with, it would negate that law, because ALTAC's argument basically is it doesn't matter if the documents are recorded or not, as long as you ask enough questions, you're eventually going to find them, and then those documents will provide you with notice of these unrecorded interests. And that seems to conflict with California law. I think in essence, ALTAC's argument, if true, would make the requirement of a bona fide purchaser irrelevant, because either someone's going to ask all the questions that they possibly can about unrecorded interests in the property, regardless of, you know, the visible state of affairs and the chain of title, or they're not. And if they ask those questions, they'll have actual notice. And if they don't ask those questions according to ALTAC's, that defeats their bona fide purchaser status, and that's just not supported by the case law. I think that ALTAC seems to be confusing when they talk about, you know, what a reasonably prudent purchaser would do when they're buying a piece of a former landfill. They seem to be confusing what the case law says about what a reasonably prudent person has to do in order to become a bona fide purchaser, which is, you know, a bona fide purchaser has to do with what you know about the ownership interests in the property. They're confusing that with what a sophisticated builder might do if they were buying a contaminated piece of property. But there's nothing, there's no case law that says that a reasonably prudent purchaser and a sophisticated builder are the same thing. There's nothing that says that a reasonably prudent purchaser of a piece of property, whether it's a landfill or a house, has to look beyond what they see when they walk the property and what they find in the chain of title. There's nothing that says that they have to go beyond that and ask questions. Well, okay, it looks like everything's okay, but just tell me, is there anything I should be aware of? There's nothing in the case law that says anyone has to do that. Thank you. Yes. Your Honor, Frank Kepler appearing on behalf of Burke Pornisseri, Linda Pornisseri, and the Pornisseri Family Trust. I just want to speak directly to the constructive notice issue because my client actually had a recorded deed of trust as of the date that Altex purported to have signed this purchase and sale agreement. It expanded that security later, though, didn't it? Yes, well, it both expanded the scope of the lien, and because it had been unpaid for four years, there had been accrued interest. So there was a greater amount of unpaid obligation secured by a greater amount of property. Some of your lien is clearly prior. Yes. But that's sort of to my point, Your Honor, is that Altex had constructive notice of what it was that the Pornisseries asserted, a perfected lien on the property of first priority. That lien was then subordinated to the SURF lien in 2003 when the collateral expanded and the debt was reaffirmed. But in terms of Mr. Kufitz's client's obligation to pursue these lien and title rights, as Altex asserts them, it would have to clear two fairly substantial, well, I think unattainable hurdles in order to reach the position that Altex wants it to reach, which is that the unsecured creditors come ahead of all the secured claims. First, it would have to prove to this Court's satisfaction and others that inquiry notice, as SURF's counsel has articulated it very well, is what sets the bar in terms of asserting a senior right. So it has Mr. Kufitz standing in the shoes of Altex, or Altex in this case, would have to prove that inquiry notice means that if there's any shred of a fact or an assertion in any public record, however maintained, that third parties have notice of it. Then Mr. Kufitz would have to argue, as Altex did before Judge Thompson, that a consensual restructuring of my client's obligation to capitalize interest, which had not been paid for four years, and expand the scope of security because of the increased risk of default, they would have to then prove that that conduct was sufficient to subordinate my client's deed of trust to an unrecorded contract interest. So Altex, putting the inquiry burden and the constructive notice burden where it actually should lie, Altex took note with notice of my client's interest in this property. Four years into it, the debtor had not paid its obligation. My client restructured the obligation. The public record shows that it both increased its collateral and reaffirmed the obligation. And in order to get to the point where the unsecured creditors completely avoid the liens and step ahead of my client, you have to, one, prove the constructive notice doesn't mean a recorded deed of trust, it means something else, inquiry notice, and two, show that because that inquiry notice occurred later in time than the recorded deed of trust in favor of my client, that now withstanding the provisions of the deed of trust, that Mr. Kufitz could show that under California law, the modification of the deed of trust subordinated a first perfected recorded interest to an unrecorded interest based on inquiry notice. Thank you. Thank you, Your Honors. I just wanted to make a couple of statements. Again, there were some factual inaccuracies in some of the presentations. For example, Mr. Kufitz said that I represented the debtor when, in fact, this contract was signed. That's just simply not true. But going to some of these things, on the question of a secured claim, the bankruptcy court ruled that we could not file a late claim, but she also ruled that you don't need to file a proof of claim to preserve your liens. So the bid about not filing a proof of claim did not, in fact, whatever validity the liens may have had. On ProBasco, Your Honor, it is not as far-fetched as counsel would like to imply. I am not suggesting that the standard is you either record or you go look for every single piece of paper, and if you don't find something, then you're safe. What I'm suggesting is that inquiry notice, while I do not have a case that's on these facts, in fact, it's a factual inquiry looking at each particular case. If you look at the cases cited at the back, it goes beyond walking the property. And that's what we were denied the opportunity to have at the bankruptcy court because the bankruptcy court said inquiry is what you notice from walking the property, and we could not present our case. That's what we believe was the error here, and we would ask the court to give us the opportunity with the bankruptcy court approving the – on inquiry notice. Thank you. Okay. And so the second appeal, 60052, is submitted, and we'll recess for a brief break.
judges: Canby, Gould, Ikuta